# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| DOREA M. ELMADIH | CIVIL ACTION NO. 16-1601 |
| VERSUS | JUDGE ROBERT G. JAMES |
| PRIMARY HEALTH SERVICES CENTER, ET AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 35] filed by Defendant Primary Health Services Center. Plaintiff Dorea M. Elmadih opposes the motion. [Doc. No. 37]. For reasons assigned below, the motion is GRANTED IN PART AND DENIED IN PART.

## I. FACTS AND PROCEDURAL HISTORY

On June 16, 2014, Plaintiff received dental treatment at Defendant Primary Health Services Center's ("PHSC") facility.

On approximately July 10, 2014, Plaintiff signed, dated, and printed her name on a blank form entitled, "Authorization to Use or Disclose Protected Health Information" ("the blank authorization"). [Doc. Nos. 37-11, 37-12]. When Plaintiff signed the form, the blank for inserting the provider authorized to disclose protected health information was vacant, the blanks for Plaintiff's name, social security number, date of birth, and address were vacant, the blanks for the particular information to be disclosed and dates of treatment were vacant, and the blank for inserting the party to whom information should be provided was vacant. [Doc. No. 37-12].

On August 4, 2014, Plaintiff's counsel sent an "Authorization to Use or Disclose Protected Health Information" ("the first authorization") to PHSC, mistakenly requesting copies of Plaintiff's

medical records from June 18, 2014, rather than June 16, 2014. [Doc. No. 37-4, pp. 3-4]. Plaintiff did not actually sign the first authorization; rather, Plaintiff's counsel created the first authorization "by copying" the blank authorization. [Doc. No. 37-1, p. 1]. Plaintiff's counsel's assistant then "filled in the provider's name and other identifying information, including what she believed to be the correct date of treatment (June 18, 201[4]) onto the copy of the original blank release." [Doc. No. 37-1, p. 1].

On August 29, 2014, PHSC advised Plaintiff's counsel that it had "no records responsive to the dates [of treatment listed on the first] authorization." [Doc. No. 35-4, p. 1]. "PHSC had no records on [Plaintiff] from June 18, 2014, forward." [Doc. No. 35-2, p. 1].

On September 3, 2014, Plaintiff's counsel's assistant "prepared a second duplicate medical release ["the second authorization"] using the correct [treatment] date of June 16, 2014 and sent another request for medical records . . . ." [Doc. Nos. 37-1, p. 2; 37-7]. The second authorization "was simply the [first] authorization with the dates of requested records altered from June 18, 2014 to June 16, 2014." [Doc. Nos. 35-2, p. 2; 37-7, p. 2]. PHSC responded to the second authorization on September 15, 2014:

> The second request . . . clearly is nothing more than an alteration of the first request wherein the date range for the requested records was changed. Thus, the altered request does not comply with the strict requirements of [the Health Insurance Portability and Accountability Act ("HIPAA")]. Accordingly, PHSC cannot and will not process this request inasmuch as it was not executed by [Plaintiff] in the form presented.

[Doc. No. 35-6, p. 1]. PHSC "pointed out [the] deficiencies" to Plaintiff's counsel "and requested that he merely send a new authorization . . . that was signed by [Plaintiff]." [Doc. No. 35-1, p. 6]. But, according to PHSC, Plaintiff's counsel refused to send a proper authorization "and instead filed

2

the instant suit." *Id.*

On September 16, 2014, Plaintiff's counsel sent a letter to PHSC, claiming that PHSC violated LA. REV. STAT. § 40:1165.1(A)(2)(b)(i) when it declined to provide the medical records that Plaintiff's counsel requested in the second authorization. [Doc. No. 37-9, p. 2].

Plaintiff's counsel maintains that he sent a third authorization to PHSC on January 16, 2015, which Plaintiff signed on the same date. [Doc. Nos. 37-1, p. 3; 37-10, p. 2]. PHSC contends that it "has no records that it ever received" the third authorization. [Doc. No. 40, p. 1].

Plaintiff filed suit in Monroe City Court on May 29, 2015, alleging dental malpractice and, pertinent here, that PHSC's "refusal to comply and fulfill the requests . . . amounts to violations of LA R.S. 40:1299.96."[1] [Doc. No. 1-2, p. 4]. Defendants removed the proceeding to this Court on November 18, 2016. [Doc. No. 1].

PHSC filed the instant Motion for Summary Judgment on January 10, 2018. [Doc. No. 35]. Plaintiff responded to the motion on February 1, 2018 [Doc. No. 37], and PHSC replied on February 12, 2018 [Doc. No. 40].

## II.  LAW AND ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[1] The legislature redesignated LA. REV. STAT. 40:1299.96 as LA. REV. STAT. § 40:1165.1 in 2015.

242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[2]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton*

---

[2] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

4

*v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B. Whether the Second Authorization was Proper

Plaintiff, to reiterate, alleges that PHSC violated LA. REV. STAT. § 40:1165.1(A)(2)(b)(i) when it declined to provide the medical records requested in the second authorization. [Doc. No. 1-2, p. 4]. LA. REV. STAT. § 40:1165.1(A)(2)(b) (emphasis added) provides in pertinent part:

> (i) a patient or his legal representative . . . shall have a right to obtain a copy of the entirety of the records in the form in which they exist . . . *upon furnishing a signed authorization*.
>
> . . . .
>
> (ii) any violation of Items (i) or (ii) of this Subparagraph shall be subject to a civil penalty of five hundred dollars per violation, plus attorney fees and costs at the discretion of the court, payable to the requestor of the medical records.

Here, Plaintiff's counsel did not furnish a signed authorization. While Plaintiff did sign the blank authorization, counsel did not furnish the blank authorization. Moreover, because the blank authorization lacked any information to authorize, Plaintiff authorized nothing when she signed it.

Plaintiff's counsel did furnish the second authorization. However, counsel admits that

5

Plaintiff never signed it: "Whenever [Plaintiff's counsel] instructed his paralegal to make a medical records request, [counsel's] paralegal would run a copy of the [blank] authorization on the office copier machine, fill in the provider's name and date of treatment and other pertinent information, then forward the authorization to the provider . . . ." [Doc. No. 37, p. 7]. Instead of furnishing a signed authorization, Plaintiff's counsel furnished an authorization form with a copy of Plaintiff's signature, which counsel reproduced from the blank authorization that Plaintiff signed. [Doc. No. 37-12, p. 1]. PHSC did not, consequently, violate LA. REV. STAT. § 40:1165.1(A)(2)(b)(i).[3]

Citing the affidavits of several attorneys, Plaintiff argues that "use of reproduction authorizations is the standard method for obtaining medical records in Louisiana . . . ." [Doc. No. 37, p. 7]. Custom, however, does not excuse noncompliance with LA. REV. STAT. § 40:1165.1(A)(2)(b)(i).

Plaintiff also argues that PHSC must have known that the first authorization, like the second, also contained a reproduction of Plaintiff's signature because "anyone looking at the document would be aware that it was a copy of an original document . . . ." [Doc. No. 37, p. 8]. Plaintiff reasons that PHSC actually produced information concerning Plaintiff's treatment when PHSC stated, in response to the first authorization, that it had no record of treatment on the requested date.

---

[3] A signature reproduced from one document and applied to another, distinct document provides no indicia of reliability, absent any accompanying grant of authority from the signatory to act on the signatory's behalf (such as a specific written mandate or procuration authorizing another to either utilize the signatory's signature or to add content to a previously-signed document). *See In re Gould,* 37,400 (La. App. 2 Cir. 8/20/03), 852 So. 2d 1123 (holding that a brother's furnishing of a valid power of attorney from patient was sufficient written authorization from patient for release of medical records); *see generally Stanfield v. White*, 535 So. 2d 753, 756 (La. Ct. App.) ("The filling in of a blank in a written instrument presents a question of authority and not one of alteration."); *see also* La. Civ. Code Ann. art. 2993("[W]hen the law prescribes a certain form for an act, a mandate authorizing the act must be in that form.").

Plaintiff then theorizes that if PHSC is correct that a signature reproduced from one document and applied to another does not constitute a signed authorization, PHSC should not have produced protected health information after receiving the first authorization. Even assuming, however, that notification of the absence of medical records amounts to producing medical records, this argument is irrelevant because Plaintiff seeks damages from PHSC for *failing* to provide medical records, not for providing records.[4]

Next, Plaintiff argues that PHSC did not properly reject the second authorization under HIPAA. [Doc. No. 37, p. 9]. Defendant maintains that, in addition to rejecting the second authorization under state law, it rejected the second authorization under the following HIPAA provisions: 45 C.F.R. § 164.508(b)(2)(ii) and (v).[5] Whether PHSC properly rejected the second authorization under HIPAA is, however, inapposite because Plaintiff only seeks damages under LA. REV. STAT. § 40:1165.1(A)(2)(b)(i). In other words, even assuming, for the sake of argument, that PHSC should have provided records under HIPAA, PHSC properly withheld records under state law.[6]

---

[4] Plaintiff also suggests that PHSC harbored an ulterior motive in rejecting the second authorization. Plaintiff argues that "PHSC's action in processing this first [authorization] implies that PHSC personnel believe that a reproduction authorization is HIPAA-compliant." [Doc. No. 37, p. 8]. Plaintiff suggests, in other words, that because PHSC processed the first authorization, which contained a signature reproduced from another document, yet declined to process the second authorization with a signature reproduced from another document, PHSC must have rejected the second authorization for reasons other than the absence of an original signature. Whether Plaintiff's suspicions are true, however, is irrelevant because Plaintiff did not sign the second authorization.

[5] These provisions provide, respectively, that an authorization is not valid if "[t]he authorization has not been filled out completely" with a "[s]ignature of the individual and date" or if "[a]ny material information in the authorization is known by the covered entity to be false."

[6] Neither party offers a preemption argument or analysis.

Finally, Plaintiff argues that "a medical authorization which is electronically signed must . . . be accepted as the legal equivalent of a handwritten signature." [Doc. No. 37, p. 11]. Plaintiff's counsel, however, did not utilize an electronic signature.[7]

Accordingly, there is no genuine dispute concerning whether Plaintiff signed the second authorization. PHSC is, therefore, entitled to judgment as a matter of law on Plaintiff's claim that it improperly withheld records following the second authorization. The motion is, to this extent, GRANTED.

### C. Whether Plaintiff Furnished the Third Authorization

Plaintiff's counsel maintains that he sent the third authorization, which Plaintiff did sign, to PHSC on January 16, 2015, but PHSC did not respond. [Doc. Nos. 37-1, p. 3; 37-10, p. 2]. While PHSC contends that it "has no records that it ever received" the third authorization,[8] Plaintiff's counsel's paralegal avers that she "sent the request via mail . . . ." [Doc. No. 37-2, p. 3]. Thus, there is a genuine dispute concerning whether Plaintiff furnished the third authorization. The motion for summary judgment is, to this extent, DENIED.

### III. CONCLUSION

For the foregoing reasons, Defendant Primary Health Services Center's Motion for Summary Judgment [Doc. No. 35] is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED with respect to Plaintiff's claim that PHSC improperly withheld records following the second authorization, and this claim is DISMISSED WITH PREJUDICE. The motion is otherwise

---

[7] As PHSC phrases it, "The act of photocopying a handwritten Authorization does not convert it to an electronic signature." [Doc. No. 40, p. 4].

[8] [Doc. No. 40, p. 1].

DENIED.

MONROE, LOUISIANA, this 12th day of March, 2018.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE